UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

AIMEE MURPHY,

        Plaintiff,

    v.

KILOLO KIJAKAZI,

        Defendant.

CIVIL ACTION NO. 3:21-CV-01520

(MEHALCHICK, M.J.)

**MEMORANDUM**

Plaintiff Aimee Murphy ("Murphy") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Doc. 1). For the following reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be **AFFIRMED**.

I.    BACKGROUND AND PROCEDURAL HISTORY

On July 10, 2019, Murphy filed an application under Title II for a period of disability and disability insurance benefits, alleging disability beginning February 4, 2019. (Doc. 9-5, at 2). The Social Security Administration initially denied the application on December 12, 2019, and upon reconsideration on June 1, 2020, prompting Murphy's request for a hearing, which Administrative Law Judge ("ALJ") Scott M. Staller held on October 27, 2020. (Doc. 9-2, at 72). In a written decision dated November 18, 2020, the ALJ determined that Murphy is not disabled and therefore not entitled to benefits or income under Title II. (Doc. 9-2, at 53). The

Appeals Council subsequently denied Murphy's request for review on July 7, 2021. (Doc. 9-2, at 2).

On September 2, 2021, Murphy commenced the instant action. (Doc. 1). The Commissioner responded on November 12, 2021, providing the requisite transcripts from Murphy's disability proceedings. (Doc. 8; Doc. 9). The parties then filed their respective briefs, with Murphy raising two principal bases for reversal or remand. (Doc. 10; Doc. 13; Doc. 15). This matter is ripe for disposition.

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A.   ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration,

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

working through ALJs, decides whether a claimant is disabled by following a now-familiar five-step analysis." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess,* 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

     B.    JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r of Soc. Sec.*, 798 F. App'x 734, 737 (3d Cir. 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Murphy is disabled, but whether the Commissioner's determination that Murphy is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In his written decision, the ALJ determined that Murphy "was not under a disability, as defined in the Social Security Act, at any time from February 4, 2019, the alleged onset date, through September 30, 2020, the date last insured." (Doc. 9-2, at 66). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). Initially, the ALJ found that Murphy last met the insured status requirements of the Social Security Act on September 30, 2020. (Doc. 9-2, at 58).

A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging

in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Murphy "did not engage in substantial gainful during the period from her alleged onset date of February 4, 2019 through her date last insured on September 30, 2020," and therefore proceeded to step two of the analysis. (Doc. 9-2, at 58).

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to step three. Here, the ALJ found that Murphy has five severe impairments: type 1 diabetes mellitus, neuropathy, chronic left great toe ulcer, osteomyelitis, and obesity. (Doc. 9-2, at 58). The ALJ found that Murphy also has the following non-severe impairments: hypertension, hypothyroidism, hyperlipidemia, and anxiety. (Doc. 9-2, at 59-60).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination

of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines the claimant's impairment or impairments meet a listing, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). The ALJ considered listing 11.14 (peripheral neuropathy). (Doc. 9-2, at 60). Here, the ALJ determined that none of Murphy's impairments, considered individually or in combination, meet or medically equal the severity of a listed impairment. (Doc. 9-2, at 60-61).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ examines all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry in which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c). Here, the ALJ found that while Murphy's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Murphy's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 9-2,

at 61).

Considering all the evidence in the record, the ALJ determined that Murphy had the

RFC "to perform light work as defined in 20 CFR 404.1567(b)," subject to the following non-

exertional limitations:

> [Murphy] can stand and/or walk 4 hours in an 8 hour workday. She can
> occasionally climb, balance, stoop, kneel, crouch or crawl. [Murphy] can
> tolerate occasional exposure to unprotected heights and moving mechanical
> parts. She can have frequent exposure to dust, fumes, gases, odors, poor
> ventilation and other pulmonary irritants.

 (Doc. 9-2, at 61).

E.    STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant

period, the RFC to perform the requirements of his or her past relevant work regardless of the

claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant

work is work that the claimant has done within the past 15 years, that was substantial gainful

activity, and that lasted long enough for the claimant to learn the requirements of the work.

20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity

to perform the particular functional demands and job duties of the past relevant work, either

as the claimant actually performed the work or as ordinarily required by employers

throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d

Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work

despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. §

404.1520(a)(4)(iv)). Here, the ALJ determined that through the date last insured, Murphy was

capable of performing past relevant work as an insurance manager as the work did not require

the performance of work-related activities precluded by Murphy's RFC. (Doc. 9-2, at 66).

F.   STEP FIVE

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v) A claimant who can adjust to other work is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Because the ALJ determined that Murphy could perform her past relevant work as an insurance manager, he did not proceed to step five of the sequential analysis. (Doc. 9-2, at 66).

IV.   **DISCUSSION**

Murphy raises two issues on appeal. (Doc. 10, at 2). First, Murphy argues that there is a lack of substantial evidence of record to support the ALJ's finding that Murphy could perform her past relevant work as an insurance manager. (Doc. 10, at 3). Second, Murphy asserts that the ALJ failed to properly analyze her Type I Diabetes under Social Security Regulation 14-2p. (Doc. 10, at 5). In opposition, the Commissioner submits that Murphy failed to establish disability under the strict standards set by the Social Security Act. (Doc. 13, at 1). Further, the Commission submits: "the ALJ properly evaluated the evidence, identified substantial evidentiary support for his findings, and provided a narrative discussion that permits meaningful judicial review." (Doc. 13, at 2).

A.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT.

Murphy asserts that the ALJ erroneously analyzed Murphy's limitations related to her type 1 diabetes mellitus. (Doc. 10, at 5). Specifically, Murphy argues that the ALJ failed entirely to address SSR 14-2p in his decision. (Doc. 10, at 6). Pointing to evidence and testimony that she suffers from diabetes-induced hypoglycemia that is now leading to additional complications, Murphy argues that the record demonstrated that her type 1

diabetes was "of a sufficient severity to be disabling." (Doc. 10, at 5-6). The Commissioner responds that the ALJ incorporated all of Murphy's credible limitations related to her type 1 diabetes mellitus under the framework established by SSR 14-2p, considered Murphy's medical records and activities of daily living, and reviewed prior administrative findings that found Murphy could perform a reduced range of light work with additional limitations. (Doc. 13, at 12).

Assessing an individual's RFC falls within the purview of the ALJ. *See* 20 C.F.R. § 404.1546(c); SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996); *see also Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).' " *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. *See* 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

When determining an individual's RFC, the ALJ must consider all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 808-09 (3d Cir. 2018). By regulation, medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including

your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "Other relevant evidence includes precipitating or aggravating factors, symptoms, medication and treatment, and daily activities." *Sponheimer,* 734 F. App'x at 808-09. If a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.' " *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason,* 994 F.2d at 1066); *see also Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer,* 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [the ALJ] rejects." (quoting *Mason,* 994 F.2d at 1066)).

To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explanation of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter v. Harris,* 642 F.2d 700, 704, 706-707 (3d Cir. 1981). An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004); *see Hur v. Barnhart,* 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones,* 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.,* 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

To the extent Murphy asserts an error at step two of the sequential process, the Court agrees that the ALJ did not discuss diabetic neuropathy as an impairment at step two. (Doc. 9-2, at 60). A step two error may be deemed harmless where the limitations related to the impairment are included in the RFC. *Perry v. Berryhill*, No. 3:17-CV-1158, 2018 WL 5734692, at \*11 (M.D. Pa. Nov. 2, 2018). If the sequential evaluation process continues beyond step two, an ALJ's failure to properly consider a specific impairment at step two may be deemed harmless if the functional limitations associated with the impairment are accounted for in the RFC. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (not precedential) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ). In other words, because the outcome of a case depends on the demonstration of functional limitations rather than a diagnosis, where an ALJ identifies at least one severe impairment and ultimately properly characterizes a claimant's symptoms and functional limitations, the failure to identify a condition as severe is deemed harmless error. *Garcia v. Comm'r of Soc. Sec.*, 587 F. App'x 367, 370 (9th Cir. 2014) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)); *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006) (not precedential) ("Mere presence of a disease or impairment is not enough[;] a claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity."); *Burnside v. Colvin*, No. 3:13-CV-2554, 2015 WL 268791, at \*13 (M.D. Pa. Jan. 21, 2015); *Lambert v. Astrue*, No. 08-657, 2009 WL 425603, at \*13 (W.D. Pa. Feb. 19, 2009).

At step four of the sequential process, the ALJ found that Murphy had the RFC to perform light work subject to certain additional limitations. (Doc. 9-2, at 61). In the RFC determination, the ALJ found that Murphy's allegations regarding the limiting effects of her alleged conditions, including her type 1 diabetes, are not supported by the record. (Doc. 9-2,

at 65). At the onset, using the language of SSR 14-2p, the ALJ noted that Murphy's "type 1 diabetes mellitus . . . do[es] not meet any section of the listings. There is no evidence indicating that these conditions have increased the severity of any of [Murphy]'s coexisting or related impairments to the extent that the combination of such impairments meets the requirements of a listing." (Doc. 9-2, at 60). The ALJ analyzed objective medical evidence and testimony by Murphy and her parents. First, the ALJ mentioned Murphy's parents testified that Murphy's blood sugar levels are uncontrolled and that she is limited in her ability to work due to type 1 diabetes with foot complications, which limits her ability to stand, walk, exercise, or perform other postural activities. (Doc. 9-2, at 65). Further, the ALJ noted that Murphy's main concern is her chronic left foot complications with a chronic wound at her left great toe, which healed slowly and required flexor tenotomy treatment. (Doc. 9-2, at 65).

Considering objective medical evidence of record, the ALJ explained that "[w]hile [Murphy] alleges uncontrolled blood sugar levels, the record indicates that her type 1 diabetes mellitus was noted to be without complication with her A1c noted at 6.7." (Doc. 9-2, at 65). The ALJ discussed three medical opinions that mention type 1 diabetes: (1) Christian Hall, M.D. ("Dr. Hall")'s finding that Murphy had a grade 2 diabetic foot ulcer that did not appear healed; (2) Brian Elias, DPM ("Dr. Elias")'s notation of Murphy's history of type 1 diabetes with recent A1c noted at 6.7; and (3) Jennifer Wilson, D.O. ("Dr. Wilson")'s assessment that Murphy can stand and/or walk for four hours in an eight-hour workday, sit for six hours in an eight-hour workday, and ability to occasional perform postural activities. (Doc. 9-2, at 64-65). The ALJ further explained that although Murphy visited the emergency room twice during the relevant period due to hyperglycemia, she was stable for discharge on the same day on both occasions. (Doc. 9-2, at 65). The ALJ also highlighted that her first visit to the

emergency room occurred while her insulin pump was disconnected for an imaging study. (Doc. 9-2, at 65). Next, the ALJ explained: "Dr. Smith examined [Murphy] and noted that she was 'doing very well' following the left great toe tenotomy with the puncture area healed and the toe straight with no sign of infection or other complication." (Doc. 9-2, at 65). Finally, the ALJ stated that "[w]hile [Murphy] had limited with weight bearing at times secondary to post-surgical recommendations, as would be expected, her physical examination findings show overall intact strength, reflexes, and sensation." (Doc. 9-2, at 65-66).

In conclusion, the ALJ found that Murphy "has the above-mentioned [RFC] assessment, which is supported by the medical evidence of record and the opinion of Dr. Wilson." (Doc. 9-2, at 66). Thus, the ALJ recognized Murphy's diabetic neuropathy and foot complications by limiting her to light work subject to certain exertional and postural limitations. (Doc. 9-2, at 61). The Court notes that "[m]erely reviewing evidence does not satisfy the ALJ's obligation to provide an explanation for the weight attributed to probative evidence and a failure to mention and explain contradictory objective probative evidence is error." *Perry*, 2018 WL 5734692, at *11 (citing *Burnett*, 220 F.3d at 119-20; *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979); *Cotter*, 642 F.2d at 706-07). However, in this case, the ALJ thoroughly analyzed the evidence of record, articulated why objective medical evidence contradicted the testimony of Murphy and her parents, and highlighted the evidence that support a finding of no disability. (Doc. 9-1, at 65). The ALJ explained that while the record did indicate that Murphy had limitations from her type 1 diabetes mellitus, the objective medical evidence was not consistent with a greater level of limitation. (Doc. 9-2, at 61-65). In addition, the ALJ's use of alleged "boilerplate verbiage" is harmless error because the Court finds that the ALJ properly discussed Murphy's testimony, along with the medical

opinions and other evidence of record, in sufficient detail to allow meaningful judicial review. *See Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 704, 706-07.

Accordingly, substantial evidence supports the ALJ's RFC assessment regarding Murphy's type 1 diabetes mellitus.

B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT MURPHY CAN PERFORM HER PAST RELEVANT WORK.

Murphy argues that the hypothetical question posed to the vocational expert ("VE") by the ALJ failed to include all impairments that were supported by the record, including absenteeism. (Doc. 10, at 3). Specifically, Murphy submits that the ALJ failed to address her extensive medical care needs as a non-exertional limitation in the RFC determination, and erroneously found that she can perform pas relevant work. (Doc. 15, at 5). The Commissioner responds that Murphy, not the ALJ, had the burden to show that she had limitations that exceeded those included by the ALJ in the RFC, and that she failed to carry that burden. (Doc. 13, at 13).

At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the VE. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford*, 399 F.3d at 554; *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004). "A hypothetical question posed to the [VE] must reflect all of the claimant's impairments that are supported by the record; otherwise the question is deficient and the [VE]'s answer to it cannot be considered substantial evidence." *Chrupcala*, 829 F.2d at 1276; *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55. The ALJ, however, is not required to submit to the [VE] every impairment alleged by a claimant. *Rutherford*, 399

F.3d at 554. "[W]here a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has the discretion to choose whether to include the limitation in the hypothetical." *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). Thus, the question posed to the ALJ must accurately convey to the VE all of a claimant's credibly established limitations. *Rutherford*, 399 F.3d at 554 (quoting *Plummer*, 186 F.3d at 431).

During the administrative hearing held on October 7, 2020, the ALJ posed one hypothetical question to the VE. (Doc. 9-2, at 99). The ALJ asked if any work is available to a person with Murphy's age, education, and background that could perform no greater than light work with the following limitations: stand and/or walk for four hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; occasionally be exposed to unprotected heights and moving mechanical parts; and frequently be exposed to dust, fumes, gasses, odors, poor ventilation, and other pulmonary irritants. (Doc. 9-2, at 99-100). The VE concluded that such an individual can perform past relevant work as an "insurance manager." (Doc. 9-2, at 100). Next, the ALJ asked whether an individual could still perform past relevant work "if the person were reduced to a full sedentary level of work with the same restrictions," to which the VE responded in the affirmative. (Doc. 9-2, at 100). Lastly, when the hypothetical question was changed to add additional limitations requiring a person "to be off task more than 15% of the workday" or "miss one day or more of work per month on a regular, ongoing, and consistent basis," the VE indicated that these additional limitations would render the hypothetical individual unemployable. (Doc. 9-2, at 100-101).

Murphy argues that the ALJ's hypotheticals are improper because the ALJ failed to account for the fact that she spent 107 days, during the twenty-one (21) months period from

her alleged onset date of February 4, 2019, through the date of the administrative hearing on October 27, 2020, "either in the hospital, urgent care, office visits with doctors or diagnostic testing – all directly related to the care of her Tyle 1 Diabetes." (Doc. 10, at 4-5). Murphy submits "[t]his equates to an average of five (5) days per month of missed work," which is inconsistent with the VE's testimony that if an individual merely missed one (1) day of work per month on an ongoing and consistent basis, such an individual could not sustain substantial, gainful employment. (Doc. 10, at 5; Doc. 15, at 5). The Commissioner responds that the ALJ considered Murphy's absenteeism testimony and contrasted it with her admissions and objective medical evidence that her blood sugars were controlled, admissions of "robust daily activities," and prior administrative findings concluding that Murphy could perform a reduced range of light work. (Doc. 13, at 15).

To the extent that the VE testified to limitations such as being off-task or absent from work, the ALJ implicitly rejected these limitations when considering the record evidence, including medical records and medical opinion. (Doc. 9-2, at 65-66). As previously discussed, the ALJ need include only "credibly established" limitations in the RFC. *See Rutherford*, 399 F.3d at 554. While hypothetical questions to the VE must accurately portray a claimant's impairments, such questions need only reflect those impairments that are adequately supported by the record. *See Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984); *Chrupcala*, 829 F.2d at 1276. In this case, the ALJ posed a series of hypothetical questions to the VE, which contained a range of potential limitations as the ALJ had not yet formulated Murphy's RFC. After posing a number of hypothetical questions to the VE, the ALJ relied upon responses by the VE that were given at the hearing that day. (Doc. 9-2, at 66, 99-100). Moreover, the Court finds that the hypothetical questions upon which the ALJ relied fully

accommodated the limitations that were supported by the record and that were thus included in the RFC. Further, because the ALJ did not include limitations such as being off-task or absent from work in Murphy's RFC, the ALJ properly disregarded the VE's testimony regarding these limitations. *See, e.g., Leese v. Berryhill*, No. 1:17-CV-1634, 2018 WL 4374230, at *12 (M.D. Pa. June 12, 2018), *report and recommendation adopted*, 2018 WL 4361596 (M.D. Pa. Sept. 13, 2018).

A determination that claimant can perform past relevant work must reflect the following findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-64, 1982 WL 31386 at *4. Here, the ALJ determined that Murphy has the RFC to perform light work with additional limitations. (Doc. 9-2, at 61). The ALJ accounted for any limitations supported by the evidence of record when he asked the VE to assume an individual of Murphy's age, education, and work experience who is limited to light work, with additional limitations. (Doc. 9-2, at 99-100). Considering these limitations, the VE testified that such an individual would be able to perform the requirements of Murphy's past relevant work as an insurance manager. (Doc. 9-2, at 100*); see Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 376 (3d Cir. 2009) (affirming determination that plaintiff could perform past work as generally performed where the ALJ relied on "a vocational expert's testimony as to the physical and mental demands of [claimant's] past work ..."). The ALJ considered Murphy's testimony, the VE's testimony, medical evidence of record, and the information outlined in her disability application, compared Murphy's RFC of light work with the physical and mental demands of an insurance manager, and concluded that Lopez could perform past relevant work as

actually performed. (Doc. 9-2, at 66). "This finding was substantially supported by the record." *See Vega*, 358 F. App'x at 376.

Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that Murphy is able to perform past relevant work on a regular and continuing basis, despite testimony offered by the VE.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's decision to deny Murphy's application for benefits is **AFFIRMED**, final judgment is issued in favor of the Commissioner and against Murphy, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: August 18, 2022                                  *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **Chief United States Magistrate Judge**